IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,
    Plaintiff,

vs.                                 Case No. 17-10041-JTM

MARSHALL SEITTER,
    Defendant.

MEMORANDUM AND ORDER

The Indictment charges defendant Marshall Seitter with possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). The matter is before the court on three motions to suppress evidence (Dkt. 26-28) obtained from Seitter at the time he was interviewed at his workplace, a conversation which occurred while officers were attempting to execute a search warrant for Seitter's home.

Law enforcement officers spoke with Seitter on September 1, 2016 as a consequence of an investigation which was originally launched in October of 2015. At that time, Homeland Security Investigations (HSI) agents found that a hyperlink to images of child pornography had been posted to an anonymous network. The agents were able to determine that the hyperlink was posted by a VIP user of the bulletin board, and obtained

the IP addresses of users accessing the child pornography content through the hyperlink. One such IP address returned to the residence of defendant Marshall Seitter.

HSI agents in Wichita acted on the lead in July 2016, confirming that Seitter was the sole occupant of his residence. They also determined that there were no unsecured wireless connections at the residence.

On September 1, agents attempted to execute a search warrant at the residence. Seitter was not home. Special Agent Rick Moore of HSI and Detective Ray Alverson of the Wichita Police Department went to Seitter's workplace at the United States Post Office to ask for a house key. The investigators were at the Post Office for about ten minutes.

At noon, while waiting for management to locate Seitter, Moore and Alverson saw him using his phone out on the sidewalk. They approached him, identified themselves, and told him they were conducting a child pornography investigation and had a search warrant for his home.

Seeing Seitter handling his phone, Agent Moore asked if he would turn it over, in order prevent the destruction of evidence. Seitter agreed, and gave them his Model A1522 iPhone.

The officers asked if Seitter would like to speak with them at the Sedgwick County Child Advocacy Center (CAC). He agreed. Alverson also asked Seitter if he had any electronic devices in his car, a 2001 Ford Mustang. Seitter said, "not in the car," but that he had a tablet at his workstation inside.

The officers then asked Seitter if he would consent to a search of the Mustang, and

Seitter agreed. At 12:03 PM, just a few minutes after the initial approach, Seitter completed a "Waiver to Search" form which advised him of his "right to refuse to consent to a search" and stated that "I understand the permission can be revoked at any time."

Moore took Seitter's keys to both his vehicle and his residence. A deputy had arrived at the scene, and Seitter sat in the rear of the deputy's patrol vehicle as it sat next to the Mustang. Seitter thus was able to see Moore and Alverson while they searched the Mustang. At the hearing, the government submitted a video recording of Seitter in the back of the patrol car.

The officers found a cellphone in the arm rest/center console, and a Toshiba 640GB hard drive under the passenger seat. At the time the hard drive was collected, Seitter said something to the effect, "That was from 15 years ago." This was not in response to any question from law enforcement.

The search of the car was completed within a few minutes, at roughly 12:10 PM. Seitter was then driven by the deputy to the CAC. Moore and Alverson secured the tablet at Seitter's workstation, delivered the key to investigators waiting at Seitter's residence, and then proceeded to the CAC to interview Seitter.

At the CAC, Moore repeated introductions, obtained biographical information from Seitter, and asked if he would like to speak about the search warrant. Moore further advised that, if Seitter did want to speak about the warrant, Moore intended to review his *Miranda* rights with him. At that point, roughly an hour after the initial contact with law enforcement, Seitter asked to speak with an attorney. Moore terminated the interview,

3

returned Seitter's keys, and took Seitter back to the Post Office. Moore told Seitter not to return to his residence until law enforcement had completed their search.

At the residence, agents seized a Toshiba laptop, an Apple iPod Touch, an 8GB thumb drive, seven CD/DVDs, and other tangible items related to babies, such as diapers, bottles, pacifiers, and baby powder. Forensic analysis of the laptop and iPod Touch seized from Seitter's residence revealed evidence of Seitter's sexual interest in children as reflected in his "diaper kids" folders and internet activity.

On October 31, 2016, Moore obtained a search warrant for the devices found in the car (the Apple A1387 iPhone and Toshiba 640GB hard drive). The search warrant also included the iPad from Seitter's workspace, and the A1522 iPhone handed over by Seitter. Forensic examination revealed the presence of child pornography on the A1387 iPhone, the Toshiba 640GB hard drive, and the iPad, as well as other evidence reflecting Seitter's sexual interest in children. The A1522 iPhone was locked and could not be examined.

As noted earlier, Seitter has filed three motions. He seeks to suppress any statements to the officers while at the Post Office, arguing he was in custody at the time. (Dkt. 26). He has also moved to suppress the search of his vehicle, on the grounds that he was told a search warrant had been issued, and he thought the warrant was for both the residence and his car. Accordingly, the contends he did not validly consent to the search of the vehicle or the electronic devices at the Post Office. (Dkt. 27). Finally, he argues that the affidavit in support of the warrant lacked probable cause. (Dkt. 28).

Investigators are required to issue *Miranda* warnings to suspects subjected to

custodial interrogation. *See United States v. Chee*, 514 F.3d 1106, 1112 (10th Cir.2008). With respect to defendant's statements at the Post Office, the court finds no basis for determining these were involuntary. The conversation with the investigators at the Post Office was noncustodial in nature. It occurred in the open in the Post Office parking lot. There was no show of force, no use of handcuffs, and the investigators did not tell Seitter he was under arrest. The court concludes that the defendant was not in custody at the Post Office for purposes of *Miranda*.

Moreover, the noncompulsory nature of the meeting is also reflected in the consent to search form signed by Seitter, which explicitly stated "I, Marshall Seitter [name inserted by the defendant,] hav[e] been informed of my constitutional right to be free of warrantless searches...." (Exh. 1). Finally, the noncustodial nature of the Post Office meeting is also shown by the subsequent course of events — after Seitter went to the CAC and Moore reviewed his *Miranda* rights, Seitter indicated he did not want to talk and the agents promptly drove him back to the Post Office.

With respect to Seitter's comment, "That was from 15 years ago," as to the laptop found in the car, *Miranda* is inapplicable because the statement was not a response to any question, but an independently volunteered statement by the defendant.

With respect to the seizure of devices from Seitter's car and workplace, the items from the Mustang were properly obtained because Seitter voluntarily consented to the search. The Waiver to Search form completed by Seitter names the Mustang by year, model, and license plate, which appears to be signed by Seitter at 12:03 PM on September

5

1, 2016.

The form states that the person signing has "been informed of my constitutional right to be free of warrantless searches ... and of my right to refuse to consent to such a search," but that he "hereby authorizes [the named HSI investigators] to conduct a search of my ... Vehicle: [identifies vehicle]." The form further provides that the investigators "are authorized by me to take from my ... vehicle ... any software, files, computer electronic data storage media and other related items and information, which they may desire." (Exh. 1).

Nor does the court find any basis for finding that Seitter was confused and somehow believed the search warrant for his house also permitted the search of the car. As noted earlier, the consent form explicitly states that Seitter had been informed he had the ability to refuse any consent to search. The use of a separate consent form for the vehicle would suggest to an ordinary person that the warrant the officers were trying to serve at the house indeed only covered the house and not the vehicle. And Agent Moore directly testified that he told Seitter the warrant was for the search of his house. The court finds that Seitter voluntarily consented to the search of the vehicle.

With respect to the A1387 iPhone that was taken from Seitter's person, the temporary taking was voluntary, and, even if involuntary, was a legitimate means to avoid the destruction of evidence. Moreover, the motion is moot as to that phone because the phone was locked and the government has obtained no evidence from it.

And as to the A1474 iPad inside the Post Office, Agent Moore properly took the tablet into temporary custody to prevent any destruction of evidence, and the device was

searched only after investigators obtained a separate warrant for it.

With respect to the original search warrant for Seitter's residence, there is no allegation that the affidavit is false in any material respect. The affidavit describes in detail the elaborate network developed for the posting of child pornography to what is described as "Bulletin Board A." On January 4, 2016, Investigators obtained a warrant from the United States District Court for the District of Columbia requiring the host of the file sharing service supporting Bulletin Board A to produce information, including IP addresses, of persons who had accessed files on the Board which were known to contain child pornography. One of these IP addresses, which accessed the image file on November 5, 2015, was traced to an account provided by Cox Communications at a street address in Wichita, Kansas.

On January 29, 2016, investigators served a subpoena on Cox for information as to the IP address held on November 5, 2015. This confirmed the address. Investigators independently confirmed that Seitter resided at the address. Further, they found that Seitter lived alone at the address. Investigators near the residence found multiple wireless networks in the area, but all were secured. This indicated it was unlikely that any unauthorized person might have used the Cox account to access the Bulletin Board A files.

The affidavit provides probable cause, and the search warrant for the house was properly issued by the Magistrate Judge. Nor was the information contained in the affidavit so stale as to vitiate the existence of probable cause. "Whether information [in an affidavit] is too stale to establish probable cause depends on the nature of the criminal

activity, the length of the activity, and the nature of the property to be seized." *United States v. Burkhart*, 602 F.3d 1202, 1206 (10th Cir.2010). The passage of time by itself will not necessarily render information in an affidavit stale. *United States v. Mathis*, 357 F.3d 1200, 1207 (10th Cir.2004).

With respect to this type crime in particular, the Tenth Circuit has consistently observed that persons collecting child pornography will likely hoard the material for an extended period of time. *See United States v. Haymond*, 672 F.3d 948, 959 (10th Cir. 2012); *United States v. Perine*, 518 F.3d 1196, 1206 (10th Cir. 2008); *United States v. Riccardi*, 405 F.3d 852, 861 (10th Cir.2005) (quoting *United States v. Lamb*, 945 F.Supp. 441, 460 (N.D.N.Y. 1996)). As the court in *Lamb* explained, the conclusion that child pornography will be retained for long period of time

> is supported by common sense and the cases. Since the materials are illegal to distribute and possess, initial collection is difficult. Having succeeded in obtaining images, collectors are unlikely to destroy them. Because of their illegality and the imprimatur of severe social stigma such images carry, collectors will want to secret them in secure places, like a private residence. This proposition is not novel in either state or federal court: pedophiles, preferential child molesters, and child pornography collectors maintain their materials for significant periods of time.

945 F.Supp. 441, 460 (N.D.N.Y.1996) (citing cases).

Here, Agent Moore's affidavit in support of the warrant supplies a factual basis for a similar conclusion. Moore averred that, based on his experience and training, and the experience of other law enforcement officers, persons who obtain child pornography maintain their collection in a secure location, and "typically retain [such material] for many

years." Aff. ¶ 35(c). Such persons "prefer not to be without their child pornography for any prolonged period of time." *Id*. ¶ 35(f). And again:

> such individuals often maintain their child pornography images in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These child pornography images are often maintained for several years and are kept close by, usually at the possessor's residence, inside the possessor's vehicle, or at times, on their person, to enable the individual to view the child pornography images, which are valued highly.

Aff. ¶ 35(d).

The court finds that the affidavit supplied probable cause for the issuance of the warrant to search Seitter's residence.

IT IS ACCORDINGLY ORDERED this 10th day of October, 2017, that the defendant's Motions to Suppress (Dkt. 26, 27, 28) are hereby denied.

                                                            ___s/ J. Thomas Marten_____
                                                            J. THOMAS MARTEN, JUDGE